UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | | |
|---|---|---|
| JULIE A. SU, | ) | |
| Acting Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:22-cv-00849-MMH-JBT |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC.; | ) | |
| PLAN ADMINISTRATION | ) | |
| COMMITTEE; INVESTMENT | ) | |
| COMMITTEE; CSX CORPORATION | ) | |
| MASTER PENSION TRUST; CSX | ) | |
| PENSION PLAN; MERGED | ) | |
| UTU PENSION PLAN; and the | ) | |
| GREENBRIER FROZEN UNION | ) | |
| PENSION PLAN, | ) | |
| | ) | |
| | ) | **SECOND AMENDED** |
| | ) | **C O M P L A I N T** |
| Defendants. | ) | |

Plaintiff Julie A. Su, the Acting Secretary of the United States Department

of Labor ("the Secretary"), alleges the following:

<u>INTRODUCTION</u>

1.      The Secretary is charged with enforcing the provisions of Title I of

the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, <u>29</u>

<u>U.S.C. §§ 1001</u> *et seq.*

2.      ERISA requires that fiduciaries of qualifying employee benefit plans act solely, exclusively, and prudently in the interests of plan participants.  ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B).  Fiduciaries must also discharge their duties in accordance with the documents and instruments governing the plan, insofar as such documents and instruments are consistent with ERISA's other fiduciary provisions.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Fiduciaries must also refrain from certain transactions and self-dealing. ERISA § 406(a) & (b), 29 U.S.C. § 1106(a) & (b).

3.      Title I of ERISA also creates *per se* prohibitions barring conflict of interest transactions between a plan and a party in interest.  ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108.  Congress concluded that certain transactions present such grave opportunities for abuse that, except in narrowly-defined circumstances, they should be prohibited.  Thus, subject to certain narrow exceptions, ERISA prohibits, *inter alia*, a fiduciary from causing a plan to engage in the sale or exchange of property between the plan and a party in interest, ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

4.      When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits and to obtain other remedial and equitable relief as the court may deem

appropriate. The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

5.     ERISA also provides that non-fiduciaries who knowingly participate in a fiduciary's breach are subject to equitable remedies. ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.     Venue with respect to this action lies in the Middle District of Florida, where the Defendants are located and where the breaches have taken place, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

THE PARTIES

8.     The Plaintiff, the Secretary of Labor, is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, filing and prosecuting claims against fiduciaries and other parties who commit violations of ERISA. ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

9.     Defendant CSX Transportation, Inc. ("the Company") is a freight railroad and transportation operation headquartered in Jacksonville, Florida. The Company is the Plan Sponsor and named Plan Administrator of the CSX

Pension Plan, the Merged UTU Retirement Plan, and the Greenbrier Frozen Union Pension Plan (collectively "the Plans" and each a "Plan"), the assets of which are managed under the CSX Corporation Master Pension Trust ("Master Pension Trust"). The Company, as Plan Sponsor, established the Defendant Plan Administration Committee and Defendant Investment Committee (collectively, "the Committees"), comprised of corporate officers of the Company, to administer and conduct day-to-day operations of the Plans and to manage plan assets, respectively.

10. The Plan Administration Committee and the Investment Committee are named fiduciaries to the Plans. The Plan Charter specifies that the CSX Board of Directors may remove a member of the Investment or Administrative Committees at any time with or without cause upon written notice.[1] The Company, therefore, has the power to appoint, retain and remove the Plans' fiduciaries.

11. The Company has the power to appoint, retain and remove plan fiduciaries which constitutes "discretionary authority" over the management or administration of a plan within the meaning of § 1002(21)(A); 29 C.F.R. § 2509.75–8 at FR–17.[2]

---

[1] Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 15-1, 4, 7.
[2] *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 552–53 (S.D. Tex. 2003) ("A person or entity that has the power to appoint, retain, and/or remove a plan fiduciary from his position

12.     As outlined in Paragraphs 17-42 *infra*, the Company caused the Master Pension Trust to pay itself Service Fees without any oversight from the named fiduciaries. Thus, the Company acted as a functional fiduciary when it exercised discretionary authority over the Plans and their assets.

13.     The Company is, therefore, a fiduciary within the meaning of §§ 402(a) and 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. §§ 1102(a) and 1002(21)(A) and 1102(a) and is a "party in interest" within the meaning of § 3(14)(A), (B) and (C) of ERISA, 29 U.S.C. § 1002(14)(A), (B) and (C).

14.     The Investment Committee, a named fiduciary to the Plans, has the administrative authority and control with respect to the management of the Plans in that the Investment Committee has authority to establish, maintain and review investment policies relating to the investment objectives for the Plans, provides for participant-directed investments, identifies, and selects a blend of investment options that offer an adequately diversified choice. The 2018 Policy Plan Manual, which incorporates the 2018 Charter and is attached hereto as Exhibit 1, states that the Investment Committee is responsible for approval of reasonable expenses directly related to the operation or administration of the

---

has discretionary authority or control over the management of a plan and is a fiduciary to the extent that he or it exercises that power.") (Citing 4th, 5th, 7th, & 9th Circuit cases). *See also Licensed Div. Dist. No. 1 MEBA/NMU, AFL-CIO v. Defries*, 943 F.2d 474, 477 (4th Cir. 1991) (holding that the removing and replacing trustees is a manifestation of such an exercise of discretionary authority in the administration of the plan).

Plans or their assets.[3] Therefore, the Investment Committee is a fiduciary to the Plans within the meaning of §§ 402(a) 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. §§ 1102(a) and 1002(21)(A)(i) and (iii), and it is a "party in interest" within the meaning of § 3(14)(A) of ERISA, 29 U.S.C.

§ 1002(14)(A).

15.     The Plan Administration Committee, a named fiduciary to the Plans, has discretionary authority to establish and enforce rules, regulations, and procedures as it deems necessary or proper for the efficient administration of the Plans and for the determination of benefit claims and appeals under the Plans. Therefore, the Plan Administration Committee is a fiduciary to the Plans within the meaning of §§ 402(a) and 3(21)(A)(i) and (iii) and of ERISA, 29 U.S.C. §§ 1102(a) and 1002(21)(A)(i) and (iii) and it is a "party in interest" within the meaning of § 3(14)(A) of ERISA, 29 U.S.C. § 1002(14)(A).

16.     The Plans are each employee benefit plans within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3), subject to coverage under ERISA pursuant to §4(a), 29 U.S.C. §1003(a), and are joined as party defendants herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to ensure that complete relief may be granted.

---

[3] Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 15-1, 27.

## GENERAL ALLEGATIONS

17.     The Company, a fiduciary and party-in-interest, charges fees directly to the CSX Corporation Master Pension Trust for administrative services purportedly provided to the Plans by Company employees.

18.     The CSX Corporation Master Pension Trust, in turn, pays the fees to the Company.  Neither the Investment Committee nor the Plan Administration Committee reviews, as required by plan documents, including the 2018 Policy Plan Manual, the charged fees before the CSX Corporation Master Pension Trust pays the fees to the Company.

19.     The Company did not track the actual services it claims to have provided to the Plans or the time spent by its employees purportedly providing services to the Plans.  Rather, to determine the amount to charge the Plans for services, the Company merely asked its employees to provide an estimate of time spent working on the Plans for the entire year.

**The Company's Administrative Fee Structure**

20.     The Company employees that provided services to the Plans, provided an annual flat *estimated percentage* of time *they believed* they spent on providing services as a whole to the Company's accounting department; the Company did not track and report the actual time they spent working on each Plan.

7

21.     The Company determined the hourly rate to charge the Plans for the services allegedly rendered to the Plans by using the average salary of each employee who allegedly provided services to the Plans plus the average fringe benefits of such employee and dividing that number by 2,080 (40 hours per week x 52 weeks).

22.     The Company multiplied the number of estimated hours spent by employees (determined in Step 1) by the hourly rate (determined in Step 2) to generate the Service Fees for each year.

23.     After the Service Fees were approximated, the Company divided the Service Fees across all the Company's retirement plans under the Master Trust based upon asset percentages in the subaccounts. Thus, the Company did not distribute the Service Fees based on the actual time spent allegedly working for each Plan, but, instead, based on the amount of assets in each sub-account. In effect, the Company charged the accounts with more assets higher Service Fees, regardless of the amount of time Company employees spent allegedly working on each sub-account.

24.     This broad-based and generalized system of calculating fees was not appropriately designed to reflect the Company's expenses or a reasonable cost for services provided, but rather served as an inappropriate "one size fits all" approach that streamlined the fees calculations to the detriment of the Plans.

8

This resulted in the Plan with the most assets paying more than the Plans with fewer asset for the same administrative services.

26.     The Company does not have any documentation showing why one Plan should be charged more than another for the same services.

26.     The Company did not create and keep any contemporaneous records regarding what services it provided to the Plans, when it allegedly provided these services to the Plans, or how much it charged the Plans for each alleged service.

27.     The Defendant-Fiduciaries did not create and keep any documentation regarding what services they contracted for the Company to provide to the Plans.

28.     From 2016 through the present, the Company has charged, and CSX Corporation Master Trust has paid, fees for undisclosed services purportedly provided to the Plans.

29.     Between 2016 and 2020, the Company charged, and the CSX Corporation Master Pension Trust paid, a total of $1,325,744.00 in such fees. Since 2020, the Company has continued to charge, and the CSX Corporation Master Trust has continued to pay, fees to the Company.

30.     Per the Plans' Charter, both the Investment Committee and the Plan Administration Committee had an explicit duty to ensure that fees the Plans paid to service providers or other expenses are reasonable as required by law.

31.     The Plans' Charter and the Policy Plan Manual states that the Committees must ensure that fees paid to service providers and other expenses of the Plans are reasonable as required by law, including Section 408(b)-(c) of ERISA.[4]

32.     However, neither of the Committees approved the Service Fees nor reviewed the Service Fees for reasonableness.

**Defendants Engaged in a Nonexempt Prohibited Transactions**[5]

33.     As a party-in-interest and fiduciary, the Company is prohibited from providing services to the Plans and receiving the Plans' assets, under ERISA Sections 406(a) and (b).  The limited exemption to this prohibition found at ERISA Section 408(b)(2) allows a party in interest to provide services "necessary for the establishment or operation of the plan, if no more than reasonable

---

[4] Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 15-1, 4-8.

[5] The term "reasonable compensation", as set forth in section 408(b)(2), is defined in ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2), and the regulation issued thereunder, 29 CFR § 2550.408c-2. Section 2550.408b–2(c)(1)(i) provides that "[n]o contract or arrangement for services between a covered plan and a covered service provider ... is reasonable within the meaning of section 408(b)(2) ... unless the requirements of this paragraph (c)(1) are satisfied." 29 C.F.R. § 2550.408b–2(c)(1)(i). One of the requirements of paragraph (c)(1) is for covered service providers to provide to plan fiduciaries certain disclosures, regarding, among other things, the services rendered and the compensation received for those services. 29 C.F.R. § 2550.408b–2(c)(1)(iv)(A)–(C). Indeed, the service provider must disclose to the plan fiduciary a description of all direct or indirect compensation, and any compensation "paid among related parties." 29 C.F.R. § 2550.408b–2(c)(1)(iv)(C)(1)–(3).

compensation is paid therefor." 29 U.S.C. 1108(b)(2).  The Secretary has

promulgated regulations defining the terms of this exemption and explaining

how a party-in-interest, including a fiduciary, may meet this exemption. *See* 29

C.F.R. 2550.408b-2.

34.    The Company has not met the terms of the 408(b)(2) exemption or its

implementing regulations.  In particular:

> a.  The Company failed disclose in writing to the Committees
>
> a description of the services to be provided to the Plans pursuant to
>
> the contract or arrangement as required by 29 C.F.R. § 2550.408b–
>
> 2(c)(1)(iv)(A).
>
> b.  The Company failed provide to the Committees a
>
> description of all compensation that the Company reasonably
>
> expected to receive in connection with the services to be provided.
>
> 29 C.F.R. § 2550.408b–2(c)(1)(iv)(C)(1)–(3).

35.    Because the Company failed to disclose to the Committees: (1) a

description of the services it allegedly provided; and (2) all compensation it

expected to receive, the Company did not meet the terms of the Section 408(b)(2)

exemption and every payment to the Company was prohibited by ERISA.

36.    The Committees allowed the Service Fees invoiced by the party-in-

interest/fiduciary Company to be paid, without requiring the necessary

disclosures and, in turn, failed to verify the reasonableness of the fees charged by the Company for services the Company allegedly provided.

37.     The Committees allowed the Company, a fiduciary and a party-in-interest, to pay itself with plan assets.

38.     Because the Committees failed in their obligation to review the Service Fees for reasonableness, the fiduciaries caused the Plans to enter into an arrangement that caused assets of the Plans to flow back to the Company, a fiduciary and party-in-interest, resulting in non-exempt prohibited transactions.

39.     The fiduciaries each dealt with transactions involving the Plans and a party whose interests are averse to the interests of the Plans and its participants or beneficiaries when they caused the Company to receive and retain the Plans' assets.

**Losses Pursuant to ERISA Sections § 502(a)(2) and § 409(a)**[6]

40.     Sections § 502(a)(2) and § 409(a) provide broad plan-based relief. These sections permit the recovery of "any losses to the plan resulting from each" breach of fiduciary duty, restoration to the plan any the fiduciary made

---

[6] For purposes of the prohibited transaction claims (Claims II, III, IV), no showing of losses is required. See Perez v. Commodity Control Corp., No. 1:16-CV-20245-UU, 2017 WL 1293619, at *5 (S.D. Fla. Mar. 7, 2017) ("Transactions barred by ERISA Section 406(a) are per se prohibited 'regardless of whether any harm actually results from the transaction.'") (quoting Donovan v. Walton, 609 F. Supp. 1221, 1246 (S.D. Fla. 1985)).

through the use of plan assets, and other equitable remedial relief within the Court's discretion.

41.     Since the Fiduciary-Defendants breached their fiduciary duties to the Plans, a basic remedy under trust law for such a breach is to "restor[e] plan participants to the position in which they would have occupied but for the breach of trust."[7]

42.     In order to put plan participants in a position in which they would have occupied but for the breaches, there needs to be a complete reversal of the non-exempt prohibited transactions totaling $1,325,744.00.

## CLAIM FOR RELIEF I

**Disloyalty, Imprudence, and Failure to Comply with Plan Documents,
ERISA §§ 404(a)(1)(A), (B), and (D)
(All Fiduciary Defendants)**

43.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

44.     By the actions alleged in Paragraphs 17 through 42, the Defendant-fiduciaries breached their fiduciary duties to the Plans to act solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

---

[7] *Dasler v. E.F. Hutton & Co.*, 694 F.Supp. 624, 634 (D.Minn.1988); *In re BellSouth Corp. ERISA Litig.*, No. 1:02-CV-2440-JOF, 2006 WL 8431178, at *5 (N.D. Ga. Dec. 5, 2006);

like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims, in violation of ERISA §§

404(a)(1)(A) & (B), <u>29 U.S.C. §§ 1104(a)(1)(A)</u> & <u>(B)</u> by, among other things:

> a.   Failing to appropriately monitor and control the expenses the
>
> Plans paid to Defendant Company and causing the Plans to make
>
> payments to Defendant Company without ensuring that the Service Fees
>
> charged were reasonable; and
>
> b.   Causing the Plans to engage in the prohibited transactions and
>
> prohibited self-dealing and other violations set forth in Counts II – VI,
>
> below.

45.     The Defendant-fiduciaries failed to ensure that fees, including the

Service Fees, the Plans paid to service providers or other expenses are reasonable

as required by law, per the terms of the Plans' Charter in violation of ERISA §

404(a)(1)(D), <u>29 U.S.C. § 1104(a)(1)(D)</u>.

46.     As a result of the foregoing breaches, each Fiduciary-Defendant

caused injury to the Plans, for which they are jointly and severally liable

pursuant to ERISA Section 409(a), <u>29 U.S.C. § 1109</u>.[8]

---

[8] *Braden v. Wal–Mart Stores, Inc.*, <u>588 F.3d 585, 595-96</u> (8th Cir. 2009) (holding Plaintiffs are not "required to describe directly the ways in which [defendants] breached their fiduciary duties," or "the process by which the Plan was managed.").

14

## CLAIM FOR RELIEF II
### Prohibited Transactions, ERISA § 406(a)(1)(C), (D)
### (All Fiduciary Defendants)

47.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

48.     By allowing the Company, a party in interest under ERISA § 3(14)(A), (B), and (C), 29 U.S.C. 1002(14)(A), (B), and (C), to perform services to the Plans, the Defendant-fiduciaries engaged in a non-exempt prohibited transaction under ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), by causing the Company and Plans to engage in a transaction they knew or should have known constituted a direct or indirect furnishing of services between the Plans and a party-in-interest.

49.     By allowing the Plans to forward plan assets as payment for undisclosed services to the Company, a party in interest under ERISA § 3(14)(A), (B), and (C), 29 U.S.C. 1002(14)(A), (B), and (C), the Defendant-fiduciaries engaged in non-exempt prohibited transactions under ERISA § 406(a)(1) (D), 29 U.S.C. § 1106(a)(1)(D), by causing the Plans to engage in transactions that they knew or should have known were transfers of Plan assets to, or for use by or for the benefit of a party in interest.

50.     As a result of the foregoing breaches, each Fiduciary-Defendant caused injury to the Plans, for which they are jointly and severally liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109.

## CLAIM FOR RELIEF III
### Prohibited Self-Dealing, ERISA § 406(b)(1)
### (The Company)

51.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

52.     By using the Plans' assets to pay itself, the Company, a fiduciary to the Plans, dealt with assets of the Plans in its own interests or account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

53.     As a result of the foregoing breaches, the Company caused injury to the Plans, for which it is liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109.

## CLAIM FOR RELIEF IV
### Prohibited Self-Dealing, ERISA § 406(b)(2)
### (All Fiduciary Defendants)

54.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

55.     By causing the Plans' assets to be paid to a fiduciary -- the Company -- the Defendant-fiduciaries acted on behalf of a counterparty whose interests are adverse to the interests of the Plans or the interests of their participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

16

56.     The exemption described by Section 408(b)(2) and 29 C.F.R. 2550.408b-2 does not apply to transactions involving self-dealing between a fiduciary and a plan.[9]  Where a fiduciary provides a service to a plan and causes the plan to pay plan assets to itself, it must do so without receipt of compensation or other consideration (other than reimbursement of direct expenses properly and actually incurred in the performance of such services).

57.     The Company and the Committees caused the Plans to pay fees in excess of reimbursement of direct expenses actually incurred by the Company in the performance of the alleged services it provided to the Plans.

As a result of the foregoing breaches, each Fiduciary-Defendant caused injury to the Plans, for which they are jointly and severally liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109.

## CLAIM FOR RELIEF V
### Failure to Ensure Plans' Assets Held in Trust, ERISA § 403(c)(1)
### (All Fiduciary Defendants)

58.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

---

[9] If a fiduciary provides services to a plan without the receipt of compensation or other consideration (other than reimbursement of direct expenses properly and actually incurred in the performance of such services within the meaning of 29 C.F.R. § 2550.408c-2(b)(3)), the provision of such services does not, in and of itself, constitute an act described in section 406(b) of the Act.

59.     By allowing the Company to receive and retain the Plans' assets, the Defendant-fiduciaries failed to ensure that the assets of the Plans did not inure to the benefit of the Company, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

60.     As a result of the foregoing breaches, each Defendant-fiduciary caused injury to the Plans, for which they are jointly and severally liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109.

**CLAIM FOR RELIEF VI**
**Failure to Monitor and Co-Fiduciary Liability, ERISA §§404, 405**
**(All Defendant-Fiduciaries)**

61.     The Secretary adopts and incorporates by reference all preceding allegations of this Complaint.

62.     By failing in their duty to monitor the actions of each other in violation of ERISA § 404(a)(1), Defendants the Company and the Committees enabled the prohibited transactions and fiduciary breaches of each other set forth in Claims I - V above, and are jointly and severally liable for the breaches of each other pursuant to ERISA §§ 404(a)(1) and 405(a)(2), 29 U.S.C. §§ 1104(a)(1), 1105(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE**, pursuant to §§ 502(a)(2) and (5) of ERISA, <u>29 U.S.C.</u> <u>§§ 1132(a)(2)</u> and <u>(5)</u>, Plaintiff prays that the Court:

A.     Order Defendants to restore to the Plan all losses, including the non-exempt prohibited transactions totaling $1,325,744.00, and the interest or lost opportunity costs, which occurred as a result of their breaches of fiduciary duty;

B.     Permanently enjoin Defendants from engaging in any further violations of Title I of ERISA;

C.     Order Defendants to correct all prohibited transactions;

D.     Award Plaintiff the costs of this action; and

E.     Provide other appropriate equitable relief as may be necessary.

Respectfully submitted this 26th day of May, 2023.

<u>ADDRESS</u>:

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA  30303



Telephone:
(404) 302-5436
(404) 302-5438 (FAX)
E-mail:
stratton.melanie.a@dol.gov
Howard.colleen.e@dol.gov
ATL.FEDCOURT@dol.gov

SEEMA NANDA
Solicitor of Labor

TREMELLE I. HOWARD
Regional Solicitor

LYDIA J. CHASTAIN
Acting ERISA Counsel
Georgia Bar No. 142353


By: */s/ Melanie A. Stratton*
     Melanie A. Stratton
     Trial Attorney
      North Carolina No. 56219


By: */s/ Colleen E. Howard*
     Colleen E. Howard
     Trial Attorney
     Tennessee BPR No. 039926



Office of the Solicitor
U. S. Department of Labor
Attorneys for Plaintiff.

SOL Case No. 22-00059