## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| JULIE A. SU, | ) | |
| Acting Secretary of Labor, | ) | |
| United States Department of Labor | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| CSX TRANSPORTATION, INC. *et al.* | ) | |
| | ) | 3:22-cv-00849-MMH-JBT |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff's Second Amended Complaint [D.E. 46] suffers from the same fatal flaws as her first two bites at the apple: (1) neither ERISA nor its regulations require plan service providers to keep detailed, contemporaneous time records; (2) by still not pleading otherwise, Plaintiff effectively concedes that the Plans paid no more than reasonable compensation for the administrative services they received; (3) neither CSX nor the Investment Committee acted as a fiduciary with respect to the payment of administrative expenses; and (4) the Plan documents contradict Plaintiff's conclusory allegation that CSX paid itself—only the Administration Committee can direct the Trustee to issue payment for administrative expenses. The Court recognized these shortcomings in the context of Plaintiff's Amended Complaint [D.E. 13] and provided Plaintiff with an opportunity to address them in a Second Amended Complaint

("SAC"). *See* Apr. 20, 2023 Order [D.E. 39]; June 26, 2023 Order [D.E. 45]. Because the SAC fails to remedy any of these issues, much less all of them, it still fails to state a plausible claim for relief and should now be dismissed under Fed. R. Civ. P. 12(b)(6)—with prejudice.

## **FACTUAL BACKGROUND**[1]

CSX is the plan sponsor of the Merged UTU Pension Plan, the CSX Pension Plan, and Greenbrier Frozen Union Pension Plan (collectively, the "Plans"). SAC ¶ 9. Two committees are named fiduciaries to the Plans: the Administration Committee and the Investment Committee. SAC ¶ 10; Greenbrier Plan [D.E. 10-1] § 10.01; UTU Plan [D.E. 10-2] § 7.01; CSX Plan [D.E. 23-1] § 8.01. The duties and powers of the two committees are set forth in the Plans' Management Charter, which is contained in a January 2018 Policy Manual. *See* D.E. 15-1, PageID 287-295.

Specifically, the Investment Committee "has authority and control with respect to Plan assets … and shall be the Named Fiduciary for asset management." *Id.* at § 1.02, PageID 288. The Investment Committee's responsibility over investments and asset management includes the authority to "select investment advisors and other consultants and professionals to assist the [Investment Committee] in carrying out its duties" and the related authority to "ensure that fees paid to [investment] service

---

[1] On this motion to dismiss, the Court may consider the Plans, Trust Agreement, and other documents identified in the Motion to Dismiss Plaintiff's Amended Complaint. D.E. 23 at PageID 329 n.1. *See, e.g., Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

providers and other expenses of the plans are reasonable as required by law." *Id.* at §
1.02(h), (*l*), PageID 288-289.

The Administration Committee does not handle investments and asset
management, but day-to-day operations. It "has discretionary authority and
responsibility for, and shall be the Named Fiduciary for, Plan administration other
than that reserved to the [Investment Committee], including … day-to-day operation
of the Plans." *Id.* at § 2.02, PageID 290. Like the Investment Committee for its service
providers, the Administration Committee also must "ensure that fees paid to
[administrative] service providers and other expenses of the Plans are reasonable as
required by law." *Id.* at § 2.03(n), PageID 291.

The 2018 Policy & Procedure Manual, which contains the Committees'
Charter, makes plain that each committee is separately responsible for service
providers that fall within their respective areas of influence:

> Plan service providers shall be approved by the Plan Administrator or by the
> Investment Committee ***based upon nature of the services incurred***. Any selection
> of plan providers should be based upon criteria approved by the Investment
> Committee or the Plan Administrator, ***as applicable***.

*Id.* at § V.2, PageID306 (emphases added). Elsewhere, the Manual provides that the
Investment Committee and Administration Committee each "consider the fees and
expenses applicable to their oversight areas." *Id.* at PageID 299.

The division of authority between the committees is also embodied in the Trust
Agreement, which governs the Trustee who holds the Plans' assets. [D.E. 10-3]. Plan
assets may be disbursed by the Trustee "for the payment of reasonable administrative

3

expenses" if done "in accordance with the express provisions of this [Trust] Agreement." Trust [D.E. 10-3] § 7.6. The Trust Agreement then separately describes the kinds of expenses that the Investment Committee may direct the Trustee to pay (§§ 2.2, 2.3(c), 2.6), and those that the Administration Committee may direct the Trustee to pay (§ 4.1). Section 4.3 of the Trust Agreement provides: "payment of … administrative expenses shall be made from the Fund by the Trustee, in such manner, at such times, in such amounts and for such purposes as the CSX Administrative Committee" or a duly-authorized agent thereof, "may direct". [D.E. 10-3] § 4.3.

As Plaintiff alleges in the SAC, this case is about payment "for administrative services." SAC ¶ 17. Under the Charter and Policy Manual, the Administration Committee has authority over payment "for administrative services" and only the Administration Committee has the authority to direct the Trustee to make the payments at issue in this case.

Plaintiff's bald allegation that CSX paid itself with Plan assets is therefore contradicted by the express language of the Charter, Policy Manual, and Trust Agreement. *See* SAC ¶ 9. "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Thus, the Court should disregard Plaintiff's repeated allegation that CSX "paid itself" because the governing exhibits make plain that the only Defendant who could have caused the Trustee to issue payment to CSX "for administrative services purportedly provided to the Plans by [CSX] employees" (SAC ¶ 17) is the Administration Committee.

4

## ARGUMENT AND CITATION OF AUTHORITY

**I.     There Is No Legally-Cognizable Claim under ERISA for Failure to Create Detailed Billing Records**

The gravamen of the SAC is that CSX "did not track the actual services it claims to have provided to the Plans or the time spent by its employees purportedly providing services to the Plans. Rather, to determine the amount to charge the Plans for services, the Company merely asked its employees to provide an estimate of time spent working on the Plans for the entire year." SAC ¶ 19. Of crucial importance, there is no allegation that the services were not in fact provided, or that the estimates were inaccurate, or that anyone else could have provided the same services for less. For all that is contained in the SAC, the Plans received a tremendous bargain and saved millions of dollars. Plaintiff's continued failure to plead that the Plans overpaid for the services is an admission that no such allegation can be made.[2]

ERISA and its duly-promulgated regulations are silent with respect to service providers' billing practices. Consistent with its asset-protective purpose, all the statute requires is that the amount paid by the plan be "reasonable compensation." 29 U.S.C. §§ 1108(b)(2), (c). The reasonableness of compensation for services is an entirely separate topic from documentation about those services. A given amount of compensation does not suddenly become unreasonable due to the level or type of documentation around the services provided.

---

[2] Although not material to the legal issues presented in this motion, it is noteworthy context that Plaintiff's extensive pre-suit investigation included receipt of benchmarking data showing that it would have cost the Plans about three times more to obtain the services from a third party.

A party cannot be expected to know that the Secretary considers any amount of compensation—apparently no matter how objectively reasonable or even below-market it may be—to be "unreasonable" unless it is supported by contemporaneous time records. The only authority the Secretary has cited for such a requirement is Opinion Letter 2013-03A. *See* [D.E. 27] at PageID 494. As an initial matter, opinion letters do not carry the force of law and, under the DOL's own ERISA Procedure 76-1, Section 10, "[o]nly the parties described in the request for opinion may rely on the opinion." Moreover, this particular opinion letter deals with whether revenue sharing payments involving third-party providers constitute "plan assets." *Id.* On its face, the opinion letter does not deal with the reasonableness of compensation paid to a plan sponsor for the provision of administrative services and, accordingly, it is entitled to no deference in this case. *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1187-88 (11th Cir. 2021) (declining to give deference to DOL opinion letter).

As the Supreme Court has cautioned the DOL before:

> It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference.

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158-59 (2012). Regulation should be done "as much as possible" through prospective rule-making, not through retroactive enforcement litigation. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). The Secretary's attempt to simultaneously create a documentation rule and apply it to

Defendants in this action violates both due process and the Administrative Procedures Act, 5 U.S.C. § 553.

## II.   Plaintiff's Fiduciary Breach Claims Fail Against All Defendants

In Count I, Plaintiff alleges a breach of fiduciary duty against CSX, the Investment Committee, and the Administration Committee. SAC ¶¶ 43-46. The elements of such a claim are:  (1) the plan is an ERISA-covered plan, (2) the defendant was a fiduciary with respect to the challenged decision, (3) the defendant breached its fiduciary duty, and (4) the breach resulted in a loss to the plan. *See Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992). In Count VI, Plaintiff alleges a derivative claim of co-fiduciary breach under ERISA § 405(a)(2), which applies where one fiduciary's breach "has enabled" another fiduciary to commit a breach. SAC ¶¶61-62.

The primary fiduciary breach claims fail because there is no plausible allegation that CSX or the Investment Committee was a fiduciary with respect to paying for administrative services, and because Plaintiff fails to allege that the Plans could have obtained the same services elsewhere for less (*i.e.*, there was no plausibly alleged loss to the Plans). Because there is only one relevant fiduciary remaining (the Administration Committee) and no underlying breach, Plaintiff's derivative co-fiduciary breach claim fails as well.

     A.   *CSX and the Investment Committee Were Not Fiduciaries With Respect To Approving Payment for Administrative Expenses*

"A person or entity becomes an ERISA fiduciary either [1] by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained, or [2] by exercising discretionary authority or control over the management, administration, or assets of a plan." *In re SunTrust Banks, Inc. ERISA Litig.*, 749 F. supp. 2d 1365, 1372 (N.D. Ga. 2010). A party is a fiduciary only "to the extent" that it performs a fiduciary function and, accordingly, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Id.* (citation omitted); *see also Pegram v. Herdich*, 530 U.S. 211, 226 (2000) ("[T]he threshold question is … whether [the] person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint."). Thus, Plaintiff must plausibly allege facts showing that CSX and the Investment Committee are either named fiduciaries or functional fiduciaries, in either case with respect to the payment of administrative expenses.

### 1. CSX Is Not a Fiduciary With Respect To Payment of Administrative Expenses

CSX is not a named fiduciary of any Plan,[3] so Plaintiff must plausibly allege that CSX acted as a fiduciary with respect to the challenged conduct; *i.e.*, that it

---

[3] Plaintiff's conclusory allegation that CSX was a named fiduciary (SAC ¶ 9) is contradicted by the Plan documents. *See* [D.E. 10-1] § 10.01 (Greenbrier Plan named fiduciaries: Claims Review Committee, Investment Committee, and Plan Administrator); [D.E. 10-2] § 7.01 (Merged UTU Plan named fiduciaries: Administrator, Administration Committee, and Investment Committee); [D.E. 23-1] § 8.01 (CSX Plan named fiduciaries: Administrator, Committee, and Investment Committee). Of note, CSX is not the Greenbrier Plan's "Plan Administrator" or the CSX Plan's "Administrator". *See* D.E. 23 at PageID 336 n.3 (providing additional citations for defined terms).

"exercis[ed] discretionary authority or control" over the Plans "with respect to" payment for administrative services. *See In re SunTrust*, 749 F. Supp. 2d at 1372.

The only action CSX is alleged to have taken "with respect to the particular activity at issue"—payment for administrative services—is that CSX charged fees for services while the Trustee (not CSX) paid those fees from Plan assets. SAC ¶¶ 17-18 ("The Company … charges fees directly to the CSX Corporation Master Pension Trust for administrative services …. The CSX Corporation Master Pension Trust, in turn, pays the fees to the Company."). Importantly, the Trust Agreement supplies a critical step that is missing from Plaintiff's allegations—the Trustee is prohibited from paying CSX unless it is directed to do so by the Administration Committee or its agent. Trust [D.E. 10-3] §§ 4.3, 7.6.

CSX's limited role of charging fees for services that are authorized and then paid by others is not "exercising discretionary authority or control over the … assets of a plan" as required for functional fiduciary status. *See In re SunTrust*, 749 F. Supp. 2d at 1372. A service provider is not a fiduciary when it charges fees but cannot "dispose of plan assets without the trustees' approval." *See Carolinas Elec. Workers Retirement Plan v. Zenith Am. Solutions, Inc.*, 658 F. App'x 966, 971 (11th Cir. 2016). Similarly, CSX cannot dispose of Plan assets without the Trustee allowing the payment to happen, and the Trustee is prohibited from allowing payment without direction from the Administration Committee, pursuant to the Trust Agreement. *See* Trust [D.E. 10-3] §§ 4.3, 7.6. Thus, like the service provider in *Carolinas*, CSX's request for payment by the Trust is not a fiduciary act.

Plaintiff cannot establish that CSX is a fiduciary with respect to the payment of fees by alleging that it has the power to appoint the fiduciaries who themselves have the authority to cause payment of administrative fees. *See* SAC ¶ 10. One who appoints fiduciaries is himself a fiduciary with respect to the appointment, but not with respect to all fiduciary decisions later made by the appointee. Plaintiff's own published guidance recognizes the principle:

> Members of the board of directors of an employer … may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors … are, therefore, fiduciaries with respect to the plan. ***However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries*** [apart from potential co-fiduciary liability].[4]

29 C.F.R. § 2509.75-8, D-4 (1995) (emphasis added); *see also* Opp'n to Mot. for Leave [D.E. 43] at PageID 624-625 (citing cases on limits to appointing fiduciary's status).

Because CSX was neither a named nor a functional fiduciary with respect to payment of administrative expenses, Plaintiff's claims for breach of fiduciary duty against CSX should be dismissed.

2.    The Investment Committee Is Not a Fiduciary With Respect To Payment of Administrative Expenses

As with CSX, Plaintiff must plausibly allege that the Investment Committee is either a named fiduciary or a functional fiduciary, in either case, with respect to payment of administrative expenses, because that is "the action subject to complaint." *See In re SunTrust*, 749 F. Supp. 2d at 1372; *Pegram*, 530 U.S. at 226.

---

[4] Plaintiff cited this authority in opposing Defendants' Motion to Dismiss the Amended Complaint, but conspicuously failed to include the highlighted sentence in her quotation of it. *See* D.E. 27 at PageID 496-497 & n.2.

Unlike CSX, the Investment Committee is a named fiduciary, but its role is limited by the Plan documents: "each party's role as a named fiduciary shall be limited solely to the exercise of its own authority and discretion." [D.E. 10-1] § 10.01; [D.E. 10-2] § 7.01; [D.E. 23-1], § 8.01. The Investment Committee's "authority and discretion" allows it to "establish, maintain and review investment policies relating to the investment objectives for the Plans, provide for participant-directed investments, [and] identif[y] and select[] a blend of investment options that offer an adequately diversified choice." SAC ¶ 14. None of these areas of responsibility involves payment of expenses to administrative service providers. *Compare* Charter [D.E. 15-1] § 1.02 (powers of Investment Committee) *with id.* at § 2.03 (powers of Administration Committee). Since a party must be a fiduciary with respect to "the action subject to complaint," *Pegram*, 530 U.S. at 226, the Investment Committee is not a named fiduciary for purposes of this action.

Accordingly, as with CSX, Plaintiff must plausibly allege that the Investment Committee acted as a functional fiduciary with respect to the payment of administrative expenses. Plaintiff attempts to do this by arguing that page 27 of the Policy Manual [D.E. 15-1] "states that the Investment Committee is responsible for approval of reasonable expenses directly related to the operation or administration of the Plans or their assets." SAC ¶ 14. The portion of that page dealing with "Approval of Plan Expenses," however, does not specifically mention the Investment Committee, and the relevant provisions from the page cited by Plaintiff provide:

- "Reasonable expenses directly related to the operation, performance or administration of the plans or its assets, or the determination and payment of plan benefits may be paid by the trust from plan assets."

- "Where an expense is incurred with benefit to multiple plans, such amount shall be allocated and payable by plans on a pro-rata basis, as reasonably determined by the Plan Administrator."

- "The plan Trustee may pay expenses to the Plan Sponsor [i.e., CSX] either in reimbursement of eligible plan expenses incurred directly by Plan Sponsor or paid by the Plan Sponsor on behalf of the plans."

- "The Plan Sponsor, through the oversight of the Plan Administrator shall … ensure that expenses are incurred and recorded in a process with segregation of duties and proper approval for expenditure."

[D.E. 15-1] at PageID 310. In other words, far from "stating" that the Investment Committee approves "administrative" expenses, Plaintiff's evidence shows that the Plan Administrator (i.e., Administration Committee) has that authority. *See Griffin Indus.*, 496 F.3d at 1205-06 (exhibits control over contradictory allegations).

To the extent Plaintiff contends that the Investment Committee and Administration Committee both had responsibility for approval of expenses, this was not an overlapping responsibility. Each committee had authority over expenses related to its own area. *See* D.E. 15-1 at PageID 299 ("The Investment Committee and Plan Administrator will consider the fees and expenses applicable to their oversight areas[.]"). Because this case is about administrative expenses, the Administration Committee has the relevant fiduciary responsibility, not the Investment Committee.

B.    *Plaintiff Has Not Alleged Any Loss Incurred by the Plans as a Result of the Alleged Fiduciary Breaches*

The Eleventh Circuit "require[s] that the breach of the fiduciary duty be the proximate cause of the losses claimed." *Willett*, 953 F.2d at 1343. Thus, *a fortiori*, a

claim for breach of fiduciary duty requires some actual loss to a plan. Regardless of each Defendant's status as a fiduciary or not, Plaintiff's fiduciary breach claims fail because there are no allegations giving rise to a plausible claim that the Plans suffered any loss as a proximate result of the alleged fiduciary breaches.

The alleged fiduciary breach here is the payment to CSX for administrative services provided to the Plans without documentation that the Secretary deems sufficient. SAC ¶¶ 17-29. In the context of that allegation, a "loss" is only possible in the event of an "overpayment" for the services. There would obviously be no "loss" if the Plans received $1,000,000 worth of services but only paid $100 for them, no matter what documentation existed.[5] An allegation of "overpayment," however, remains conspicuously absent from the SAC. Nowhere does Plaintiff allege that the Plans paid more than the services were worth, or that the same services could have been obtained elsewhere for less than what CSX charged.

Failure to allege a loss to the Plans as a result of the alleged fiduciary breach is fatal to Plaintiff's claims. *See Pledger v. Reliance Trust Co.*, No. 1:15-cv-4444-MHC, 2019 WL 10886802, *28 (N.D. Ga. Mar. 8, 2019); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022) (requiring "allegations suggesting that the fees SAI charged are unreasonable in light of available alternatives" to state a claim for fiduciary breach; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal

---

[5] It is for this reason that Plaintiff's demand for a "complete reversal" of payments to CSX cannot supply the missing "loss" to the Plans. SAC ¶ 42. Reversing all the payments to CSX creates a windfall for the Plans, since they cannot "reverse" administrative services already received.

of fiduciary breach claim where plaintiff "failed to allege that the fees were excessive relative to the services rendered"). Accordingly, Plaintiff's claim for breach of fiduciary duty against all three Defendants should be dismissed, with prejudice.

As a corollary, Plaintiff's claim for breach of co-fiduciary liability under ERISA § 405(a)(2) must also fail. A claim for breach of co-fiduciary liability under Section 405(a)(2) requires at least two fiduciaries and there is only one relevant fiduciary in this case – the Administration Committee. Moreover, a co-fiduciary breach claim cannot stand without an underlying fiduciary breach. *See Lanfear v. Home Depot, Inc.*, 718 F. Supp. 2d 1364, 1383 (N.D. Ga. 2010). Accordingly, Plaintiff's Count VI should be dismissed with prejudice.

## III. Plaintiff Fails to State a Plausible Claim for Self-Dealing Against CSX Under ERISA § 406(b)(1).

Count III of Plaintiff's Amended Complaint alleges that CSX violated ERISA § 406(b)(1) when it "paid itself" for the administrative services. SAC, ¶¶ 51-53. This claim fails for a number of reasons.

First, Section 406(b)(1) applies only to fiduciaries and, for the reasons set forth above, CSX is not a fiduciary. Second, Plaintiff's conclusory allegation that CSX "paid itself" is contradicted by the Plan documents. CSX cannot cause the Trustee to pay anyone for administrative services, only the Administration Committee (or its agent) can do so. Trust [D.E. 10-3] §§ 4.3, 7.6.[6] The Trust Agreement governs over Plaintiff's conclusory allegation to the contrary. *See Griffin Indus.*, 496 F.3d at 1205-06.

---

[6] Plaintiff cannot escape the plain language of the relevant documents by claiming that CSX "delegated" authority to the Administration Committee, which then somehow reverted back to CSX when the Administration Committee did not exercise its authority. The Plans, Trust Agreement, and Charter <u>create</u> authority vested in the Administration Committee in the first place—they are not a "delegation" of authority that previously existed at CSX, which could then revert back to CSX as

Without a single party both causing and receiving payment, there can be no self-dealing. For example, in *Engelhart v. Consolidated Rail Corp.*, No. CIV.A. 92-7056, 1996 WL 526726 (E.D. Pa. Sept. 18, 1996), the court rejected a claim of self-dealing where the administrative committee authorized a payment (but did not receive it) and the plan sponsor received a payment (but did not authorize it). *Id.* at *13. Here, the only entity that could direct the Trustee to make payment (the Administration Committee) is not alleged to have received any payment. Thus, there cannot have been any self-dealing, and Count III should be dismissed with prejudice.

## IV.   Plaintiff Fails to State a Plausible Claim Under ERISA § 406(b)(2) Against Any Defendant

Count IV alleges that CSX, the Investment Committee, and the Administration Committee each violated ERISA § 406(b)(2) by (i) being a fiduciary (ii) who acted in a transaction (iii) on behalf of another party (iv) whose interests were adverse to the Plans. This claim also fails for a number of reasons.

First, Section 406(b)(2) applies only to fiduciaries, and CSX and the Investment Committee were neither named nor functional fiduciaries with respect to payment of administrative expenses. *See supra*. Second, the "transaction" at issue here is the Trustee sending payment to CSX for administrative services, which only the Administration Committee has the authority to direct. Trust [10-3] §§ 4.3, 7.6. Third, as applied to CSX, a claim under Section 406(b)(2) collapses into Section 406(b)(1). In other words, if CSX is alleged to be both (i) the party with adverse interests and (ii) the

---

some sort of "default".

party acting on behalf of the party with adverse interests, the claim is indistinguishable from a self-dealing claim under Section 406(b)(1) and fails for all the same reasons.

Finally, Plaintiff fails to plausibly allege that the Administration Committee acted "on behalf of" or "represented" CSX in authorizing the Trustee to disburse payment for administrative services provided by CSX. Members of the Administration Committee acted on behalf of the committee, not on behalf of CSX, when exercising the authority granted to the committee by the Plan documents. *See Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2011 WL 1233106, *11 (S.D. Fla. Mar. 30, 2011) ("When an employee takes actions regarding the plan, he is not 'acting within the scope of his authority' granted by the employer, but rather that granted by the plan or plan fiduciary.").

In sum, Plaintiff has failed to state a plausible claim against any defendant under ERISA § 406(b)(2), and Count IV should be dismissed with prejudice.

## V.  Section 406(b) Does Not Prohibit Reimbursement of Direct Expenses or Reasonable Compensation

Even if CSX were a fiduciary (it is not), not every payment made by a plan to a fiduciary falls within the scope of ERISA § 406(b). In particular, payment to fiduciaries of direct expenses "properly and actually incurred" is not "an act described in section 406(b)." 29 C.F.R. § 2550.408b-2(e)(3).[7] Similarly, payment to fiduciaries of "reasonable compensation" is permitted because "[n]othing in section 1106 … shall

---

[7] Notably, the DOL's regulation requires only that the expenses be "incurred," not that they be "documented" in any particular way.

be construed to prohibit any fiduciary from … receiving any reasonable compensation for services rendered." 29 U.S.C. § 1108(c)(2).

At the pleading stage, Plaintiff must plausibly allege that the conduct at issue falls within the scope of ERISA § 406(b) and is not otherwise lawful. *See Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) ("courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554, 557 (2007) (when the allegations are merely "consistent with [liability], but just as much in line with a wide swath of" lawful conduct, the plaintiff has failed to cross "the line between possibility and plausibility."). In this case, plausibly alleging conduct within the scope of Section 406(b) means pleading facts showing that the payments at issue were not direct expenses or reasonable compensation. Plaintiff failed to do so.

    A.   *Reimbursement of Direct Expenses Is Not Prohibited by Section 406(b)*

Plaintiff alleges that CSX employees who provided services to the Plans estimated the percentage of their time spent on Plan-related activities. SAC ¶¶ 20-22. CSX then applied an average hourly rate based on actual wages paid to the estimated number of hours spent on Plan-related activities. *Id.* This method of calculating fees to charge the Plans is at least consistent with (and, really, is probative of) the reimbursement of "direct expenses," which is not "an act described in" Section 406(b). No other factual allegations exist to push this claim across the line from a "possible" violation of Section 406(b) to a "plausible" one.

B.  *Payment of Reasonable Compensation Is Not Prohibited by Section 406(b)*

"Nothing in section 1106 … shall be construed to prohibit any fiduciary from … receiving any reasonable compensation for services rendered[.]" 29 U.S.C. § 1108(c)(2). Notwithstanding this clear declaration of congressional intent that "nothing" in section 1106 prohibits reasonable compensation, the Secretary claims that "something" does – specifically, section 1106(b).

The plain language of the statute must prevail over the Secretary's contradictory litigation position. "[N]o deference is due to agency interpretations at odds with the plain language of the statute itself. Even contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 172 (1989).

Courts have interpreted and enforced Section 408(c)(2) according to its plain language. As the Eighth Circuit held in a well-reasoned opinion, "the plain language of § 1108(c)(2) sensibly insulates the fiduciary from liability if the compensation paid was reasonable. We reject plaintiffs' reading of the ambiguous regulation because it conflicts with an unambiguous statute." *Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 909 (8th Cir. 2002); *see also Pledger*, 2019 WL 10886802 at *15 ("The plain language of the statute applies the Section 1108 exemptions to all of Section 1106."). This interpretation of Section 408(c)(2) is also consistent with ERISA's legislative history. *See* H.R. Conf. Rep. 93-1280 (ERISA "specifically allows the plan to pay a fiduciary

or other party-in-interest reasonable compensation (or reimbursement of expenses) for services rendered to the plan if the services are reasonable and necessary").[8]

If ERISA "specifically allows" reasonable compensation and nothing in Section 406 "shall be construed" to prohibit CSX from receiving reasonable compensation, then surely Plaintiff must at least allege that the payments at issue here were not "reasonable compensation." Otherwise, the SAC is "short of being facially plausible." *Doe*, 29 F.4th at 686 (citation omitted).

To address this issue, Plaintiff first alleges that the Plans with more assets paid more for the administrative services. SAC ¶¶ 23-24. But a bigger plan with more participants and assets will obviously require more administrative services. Indeed, the Policy Manual anticipates that bigger plans will pay a bigger pro rata share for administrative services. [D.E. 15-1] at PageID 310 ("Where an expense is incurred with benefit to multiple plans, such amount shall be allocated and payable by plans on a pro-rata basis, as reasonably determined by the Plan Administrator."). In any event, even if some Plans were charged more than others, such allegation does not plausibly suggest that any of them paid more than "reasonable compensation."

Plaintiff's other attempt to allege that the payments at issue here were not "reasonable compensation" turns on the application of 29 C.F.R. § 2550.408b-2, which sets forth disclosure requirements for plan service providers who wish to satisfy the provisions of Section 408(b)(2). SAC ¶¶ 33-37.

---

[8] Again, it is noteworthy that Congress did not also require that the services be "sufficiently documented" – only that they be "reasonable and necessary".

The statutory exemption that is the subject of the regulation allows for "reasonable arrangements" to provide services "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). It is important that there are two separate phrases containing the term "reasonable": (i) "reasonable arrangements" and (ii) "reasonable compensation."

The regulation cited by Plaintiff addresses only the first usage – what qualifies as a "reasonable contract or arrangement". *See* 29 C.F.R. § 2550.408b-2(c)(1)(i) ("[n]o **contract or arrangement** for services between a covered plan and a covered service provider … **is reasonable**" unless disclosures are made first) (emphases added). Indeed, it makes no sense to define the reasonableness of "compensation" in terms of prior disclosures. Whether a given amount of compensation for services is "reasonable" is an objective economic question dependent on the value of the services in the marketplace. It is totally independent of disclosures about those services.

Moreover, the regulation does not apply because CSX is not a "covered service provider" as defined therein. A "covered service provider" is one who provides the services described in subsections (A), (B), or (C) of the regulation, none of which Plaintiff alleges were provided by CSX. 29 C.F.R. § 2550.408b-2(c)(1)(iii). CSX is not alleged to have been paid for services as a "fiduciary or registered investment advisor" under subsection (A). CSX is not alleged to have provided "recordkeeping or brokerage services" within the meaning of subsection (B). And CSX is not alleged to have received "indirect compensation" such that it would fall under subsection (C). In short, even if § 2550.408b-2 addressed "reasonable compensation" (and it does not),

20

CSX is not a "covered service provider" required to make disclosures thereunder. This regulation cannot supply the missing allegation that CSX received more than "reasonable compensation."

## VI.    Plaintiff Fails to State a Plausible Claim for Party-in-Interest Prohibited Transactions under ERISA § 406(a)

In Count II, Plaintiff alleges that Defendants caused a prohibited transaction when CSX provided administrative services and received payment for them. In either case, Section 406(a)(1) only applies when the defendant is a fiduciary who "causes the plan to engage in a transaction." 29 U.S.C. § 1106(a)(1). Neither CSX nor the Investment Committee is a fiduciary with respect to the payment for administrative services and neither could "cause" the Trustee to pay CSX—only the Administration Committee or its agent could do that. *See* Trust [D.E. 10-3] §§ 4.3, 7.6. Thus, Plaintiff's claim founders on the plain language of the statute.

Plaintiff's claim for a prohibited transaction under Section 406(a) also fails for the same reason her claims under 406(b) failed – it is not a prohibited transaction to pay "reasonable compensation" for administrative services. At this point, it is important to note that Plaintiff concedes that "reasonable compensation" would defeat her claims under Section 406(a), and argues only that she need not *plead* that the payments at issue were not reasonable compensation. *See* D.E. 27 at PageID 508-509. In other words, the Secretary claims the right to force Defendants (and the Court) through expensive discovery to prove the payments were "reasonable compensation"—without even alleging that they were not.

21

Absurd results and a flood of litigation would ensue if a plaintiff could use litigation at any time to force a defendant to prove its compliance with Sections 406(a) and 408(b)(2).[9] A reading of Section 406(a) that "would prohibit ubiquitous service transactions and require a fiduciary to plead reasonableness as an affirmative defense under § 1108 to avoid suit" would be contrary to ERISA's underlying purpose. *See Sweda v. Univ. of Penn.*, 923 F.3d 320, 336 (3d Cir. 2019). The Third Circuit's rationale is cogent, and applies directly to this case:

> Reading § 1106(a)(1) as a per se rule barring all transactions between a plan and party in interest would miss the balance that Congress struck in ERISA, because it would expose fiduciaries to liability for every transaction whereby services are rendered to the plan. … Additionally, if we interpreted § 1106(a)(1) to prohibit every transaction for services to a plan, we would have to ignore other parts of the statute. For instance, ERISA specifically acknowledges that certain services are necessary to administer plans. *See* 29 U.S.C. § 1104(a)(1)(A)(ii). Interpreting § 1106(a)(1) to prohibit necessary services would be absurd …

*Id.* at 337-38 (citation omitted). Accordingly, the Court in *Sweda* affirmed the district court's granting of a motion to dismiss.

Importantly, interpreting ERISA § 406(a)(1) in this manner does not require Plaintiff to anticipate and plead around an affirmative defense. As the Seventh Circuit held with respect to the plan sponsor in *Oshkosh*, "Oshkosh is not asserting an

---

[9] *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022) ("It would nonsensical to read § 1106(a)(1) to prohibit transactions for services that are essential for defined contribution plans, such as recordkeeping and administrative services."); *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284(KBF), 2017 WL 3701482, *13 (S.D.N.Y. Aug. 25, 2017), *rev'd on other grounds*, 9 F.4th 95 (2d Cir. 2021) (dismissing prohibited transaction claim because it "would mean plan beneficiaries and participants can make out a *prima facie* case for prohibited transactions every time a recordkeeper is compensated for its services—which the plan fiduciary would then have to contest in court by affirmatively pleading and proving, under ERISA § 408, that the fee payments and revenue sharing payments were 'no more than reasonable compensation.' Surely, Congress and the courts did not intend § 406(a)(1)(A) to be read so broadly[.]").

affirmative defense under § 1108. Instead, Oshkosh is arguing that a literal reading of §§ 1102(14)(B) and 1106(a)(1)(C) would lead to absurd results that are inconsistent with ERISA's statutory purpose." 47 F.4th at 585-86. So too here.

The reasoning of these courts is directly applicable to Plaintiff's prohibited transaction claims in Count II. The Secretary's interpretation of Section 406(a) puts the Plans in a Catch-22: they must obtain services to comply with ERISA, but they cannot receive or pay for those services except through an allegedly prohibited transaction, which must then be defended through discovery and (at least) summary judgment to prove it involved only "reasonable compensation". To avoid this absurdity, Plaintiff must at least plausibly allege that the challenged transactions were not "reasonable compensation" for necessary services. Having failed to make any such allegation here, Plaintiff's Section 406(a) claims should be dismissed with prejudice.

## VII.   Plaintiff Fails to State a Claim Under ERISA § 403(c)(1)

In Count V, Plaintiff alleges that Defendants violated ERISA § 403(c)(1), the "anti-inurement provision," by paying CSX for administrative services. SAC ¶¶ 58-60. However, that provision expressly allows for the use of Plan assets to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The use of Plan assets to "defray reasonable expenses" is exactly what is alleged here, and, accordingly, Plaintiff has failed to plausibly allege a violation of the anti-inurement provision and Count V should be dismissed with prejudice.

## CONCLUSION

At this point, it has become clear that no further opportunities to amend would

result in a viable pleading. Before her Second Amended Complaint became the operative pleading in this case, Plaintiff had the benefit of reviewing and considering the authority and analysis set forth in (1) Defendant's Motion to Dismiss her Amended Complaint, (2) this Court's April 20, 2023 Order identifying deficiencies that would likely lead the Court to recommend dismissal of the Amended Complaint, and (3) Defendants' Opposition to Plaintiff's Motion to Amend, which described how the proposed Second Amended Complaint still failed to address the issues identified in the April 20 Order. Against this backdrop, Plaintiff nevertheless fails to put forward a pleading that meets the plausibility standard of Fed. R. Civ. P. 8. This repeated failure is symptomatic of a fundamental deficiency in Plaintiff's legal theory of liability, which cannot be cured with yet another amended complaint.

Accordingly, for all the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed, with prejudice.

Respectfully submitted this 17th day of July, 2023.

**HOLLAND & KNIGHT, LLP**

By:   */s/ Frederick D. Page*
Frederick D. Page
Florida Bar No. 226270
50 North Laura Street
Suite 3900
Jacksonville, FL 32202
Telephone: (904) 353-2000
Facsimile: (407) 843-4444
Fred.page@hklaw.com

**HOLLAND & KNIGHT, LLP**

Todd D. Wozniak (*Lead counsel*)
Georgia Bar No. 777275
*Admitted pro hac vice*
Peter N. Hall
Georgia Bar No. 141376
*Admitted pro hac vice*
1180 West Peachtree Street, 18th floor
Atlanta, GA 30305
Telephone: (404) 817-8500
Todd.wozniak@hklaw.com
Peter.hall@hklaw.com

*Counsel for Defendants CSX Transportation, Inc., Plan Administration Committee, and Investment Committee*

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that the instant Motion requests relief and presents arguments that have been the subject of conferral in connection with previous motions that have not been substantively ruled upon. (*See, e.g.*, D.E. 23; D.E. 42). Such prior conferrals did not result in resolution of the issues between the parties. In an effort to comply with Local Rule 3.01(g), and in an abundance of caution, movant attempted to confer again with the opposing party via e-mail at 12:24 pm on July 17, 2023. However, as of the time of filing, the opposing party has not responded. Movant will continue trying diligently to confirm the opposing party's position and supplement this certification pursuant to Local Rule 3.01(g)(3) should opposing counsel indicate that any part of the Motion has become unopposed.

By:  */s/ Frederick D. Page*
Frederick D. Page
Florida Bar No. 226270

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2023, a true and correct copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send notice of filing and complete service under Fed. R. Civ. P. 5.

By:  */s/ Frederick D. Page*
Frederick D. Page
Florida Bar No. 226270