UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULIE A. SU, etc.,

    Plaintiff,

v.                                        CASE NO. 3:22-cv-849-MMH-JBT

CSX TRANSPORTATION, INC.,
et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned on Defendants' Motion to Dismiss Second Amended Complaint ("Motion") (Doc. 47) and Plaintiff's Response thereto ("Response") (Doc. 49). For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED** and Defendants be **DIRECTED** to answer the Second Amended Complaint **within fourteen (14) days of the Court's ruling**.

    **I.**    **Plaintiff's Allegations**

The Second Amended Complaint ("SAC") (Doc. 46) identifies the parties as follows. Plaintiff, the Acting Secretary of the Department of Labor, is bringing this action to enforce the fiduciary provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA") pursuant to her enforcement authority under 29 U.S.C. § 1132(a)(2) & (5). (Doc. 46 at 1–2.) Defendants are CSX Transportation, Inc. ("CSX"); the Plan Administration Committee and the

Investment Committee (the "Committees"); the CSX Corporation Master Pension Trust (the "Trust"); and the three subject pension plans: CSX Pension Plan, Merged UTU Pension Plan, and Greenbrier Frozen Union Pension Plan (the "Plans" or "Plan").[1]  (*Id.* at 1.)

Defendant CSX is a freight railroad and transportation company that is headquartered in Jacksonville, Florida.  (*Id.* at 3.)  CSX is the sponsor and named administrator of the Plans.  (*Id.* at 3–4.)  CSX established the Plan Administration Committee and the Investment Committee, who are named fiduciaries to the Plans.  (*Id.* at 4.)  The Committees, which are comprised of CSX officers, conduct the day-to-day operations of the Plans and manage the plan assets.  (*Id.*)

The SAC alleges that CSX, a functional fiduciary to the Plans, charged fees directly to the Trust for performance of administrative services "purportedly provided to the Plans by company employees."  (*Id.* at 7.)  Plaintiff alleges that, in calculating the payments owed by the Plans, CSX did not track the actual services performed by its employees, but instead asked the employees annually to estimate the time they had spent working on the Plans that year.  (*Id.*)  CSX then calculated an hourly rate for employer-provided services to the Plans based on the cost of the employees (salary plus benefits).  (*Id.* at 7–8.)  It then multiplied that rate by the estimated hours spent by the employees providing Plan services.  (*Id.*)  Next, it

---

[1] The Trust and the Plans are joined as parties necessary for complete relief.  (Doc. 46 at 6.)

allocated this amount among the three Plans based not on the services performed for each Plan, but on the percentage of the total assets in each Plan. (*Id.* at 8.) In effect, CSX streamlined the fees calculations to the detriment of the Plans. (*Id.*) Plaintiff alleges further that the Committees did nothing to ensure the reasonableness of the fees. (*Id.* at 10.)

Plaintiff alleges that this "broad-based and generalized system of calculating fees was not appropriately designed to reflect the Company's expenses or a reasonable cost for services provided." (*Id.* at 8.) As such, she requests "a complete reversal" of CSX's billings totaling $1,325,744.00 in fees for the years 2016 through 2020. (*Id.* at 13.)[2]

The SAC contains six claims for relief titled as follows: (1) Disloyalty, Imprudence, and Failure to Comply with Plan Documents, ERISA §§ 404(a)(1)(A), (B), and (D) against all fiduciary Defendants; (2) Prohibited Transactions, ERISA § 406(a)(1)(C), (D) against all fiduciary Defendants; (3) Prohibited Self-Dealing, ERISA § 406(b)(1) against CSX; (4) Prohibited Self-Dealing, ERISA § 406(b)(2) against all fiduciary Defendants; (5) Failure to Ensure Plans' Assets Held in Trust, ERISA § 403(c)(1) against all fiduciary Defendants; and (6) Failure to Monitor and Co-Fiduciary Liability, ERISA §§ 404, 405 against all fiduciary Defendants. (Doc.

---

[2] In her Response, Plaintiff indicates that she "would not necessarily oppose a reasonable offset" subject to proof. (Doc. 49 at 15.)

46 at 13–18.)  The Motion seeks dismissal of the SAC in its entirety.  (*See* Doc. 47.)

### II.     Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the SAC sets forth sufficient factual allegations to establish a claim upon which relief can be granted.  In evaluating whether Plaintiff has stated a claim, the Court must determine whether the SAC satisfies Federal Rule of Civil Procedure 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007).  "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do.  *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to

4

survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Sinaltrainal*, 578 F.3d at 1260. Although a court must accept well-pled factual allegations as true, it is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, a court is "not required to draw plaintiff's inference." *Sinaltrainal*, 578 F.3d at 1260 (internal citation and quotations omitted). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotations omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed

5

true").[3]

### III.   Analysis

Defendants make four primary arguments why the SAC should be dismissed:

> (1) neither ERISA nor its regulations require plan service providers to keep detailed, contemporaneous time records; (2) by still not pleading otherwise, Plaintiff effectively concedes that the Plans paid no more than reasonable compensation for the administrative services they received; (3) neither CSX nor the Investment Committee acted as a fiduciary with respect to the payment of administrative expenses; and (4) the Plan documents contradict Plaintiff's conclusory allegation that CSX paid itself—only the Administration Committee can direct the Trustee to issue payment for administrative expenses.

(Doc. 47 at 1.)[4]

The undersigned recommends that all of the above arguments be rejected. First, the SAC alleges that CSX breached its fiduciary duty by not only failing to keep **any** contemporaneous records of services performed, but by merely estimating the time spent on an annual basis, rather than basing fees on actual time. CSX then allocated fees among the Plans without regard to time actually

---

[3] The motion to dismiss standard is very different from the summary judgment standard. Nothing herein should be taken as an indication of how the Court might rule on any issues presented at a later stage of this case.

[4] To the extent any arguments in the Motion that were adequately presented have not been addressed herein, the undersigned has considered them and recommends that they be rejected.

spent on each Plan.  The Committees did nothing to prevent this or to review the fees for reasonableness, to the extent they even could.  Thus, Plaintiff's allegations go significantly beyond mere record-keeping requirements.

Second, the SAC does not "effectively concede" that the Plans paid only reasonable compensation.  The allegations setting forth the opaque and unaccountable method of billing engaged in by CSX, with no oversight from any fiduciary, allows for the reasonable inference that excessive compensation was paid.  Thus, to the extent Plaintiff has this pleading burden, she has satisfied it.

Third, Plaintiff has sufficiently pleaded that CSX and the Investment Committee acted as fiduciaries.  Moreover, Plaintiff has pleaded that Defendants did not comply with the Plan documents.  Thus, even if the Plan documents said one thing, Plaintiff alleges that the reality was different.  Therefore, Defendants' further arguments should be rejected as well.

### A. Plaintiff Has Plausibly Alleged That CSX and the Investment Committee Were Fiduciaries Regarding Payment for Administrative Services.

Central to all claims, Defendants argue that Plaintiff has not sufficiently pleaded that CSX or the Investment Committee were fiduciaries regarding payment for administrative services and expenses.  (Doc. 47 at 1, 8–12.)  In support, Defendants contend that CSX had only a "limited role" of charging fees for the administrative services provided because CSX was unable to dispose of Plan assets without approval from the Administration Committee pursuant to the

7

Trust Agreement.  (*Id.* at 9.)  Similarly, Defendants also contend that, while the Investment Committee is a named fiduciary, it is a fiduciary only regarding its authority over investment policies and directives, not regarding the payment of administrative expenses.  (*Id.* at 11–12.)

>    Regarding fiduciary status, ERISA provides in relevant part:
>
>> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Regarding CSX, Plaintiff is essentially alleging that CSX controlled, directed, and engaged in the subject transactions despite what the Plan documents said, therefore making it a functional fiduciary.  This argument finds support in Eleventh Circuit case law.  *See, e.g., Carolinas Electrical Workers Retirement Plan v. Zenith Am. Solutions, Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016)[5] ("Proof of an entity's fiduciary status 'may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.'" (quoting

---

[5] The undersigned does not rely on unpublished opinions as binding precedent. However, they may be cited as persuasive authority.  *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

8

*Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir. 2001)).[6]  Here, Plaintiff alleges that CSX had both discretionary control respecting management of the Plans and that it exercised control regarding management or disposition of assets.  The SAC alleges that CSX "has the power to appoint, retain and remove plan fiduciaries which constitutes 'discretionary authority' over the management or administration of the plan within the meaning of § 1002(21)(A)."  (Doc. 46 at 4.)  Further, "[a]s outlined in Paragraphs 17–42 *infra*, [CSX] caused the Master Pension Trust to pay itself Service Fees without any oversight from the named fiduciaries."  (*Id.* at 5.)  Given CSX's ultimate authority to control the subject transactions, such allegations are plausible.  Therefore, Plaintiff has sufficiently pled that CSX acted as a functional fiduciary regarding the payment of administrative expenses.

Regarding the Investment Committee, Plaintiff alleges that, consistent with the Plans' 2018 Charter, "the Investment Committee is responsible for approval of reasonable expenses directly related to the operation or administration of the Plans or their assets."  (*Id.* at 5–6.)  Further, this allegation finds support in the Plan documents. (*See, e.g.,* Doc. 15-1 at 5 ("[T]he [Investment Committee] may . . . ensure that fees paid to service providers and other expenses of the Plans are

---

[6] Moreover, despite Defendants' reliance on *Carolinas* for support, CSX is distinguishable from the third-party administrator performing purely ministerial functions in *Carolinas*.

9

reasonable as required by law including Section 408(b)(2) of ERISA."); Doc. 15-1 at 27 (The Investment Committee Administrative Guidelines state in part: "Reasonable expenses directly related to the operation, performance or administration of the plans or its assets . . . may be paid by the trust from plan assets."); Doc. 10-3 at 6 ("The Investment Committee, as named fiduciary for plan investments under the [ERISA] shall be responsible for the administration and management of the Fund held by the Trustee under this Agreement . . . .").)  Also, as previously stated, it is plausible that Defendants were acting inconsistently with the Plan documents.  Because the Court must accept Plaintiff's well-pled factual allegations as true, the undersigned recommends that Plaintiff has plausibly alleged that both CSX and the Investment Committee were fiduciaries regarding the transactions at issue.

### B. Plaintiff Has Plausibly Alleged Breach and That the Plans Paid More Than Reasonable Compensation.

Also central to all claims, Defendants argue at length that ERISA does not require plan service providers to keep detailed, contemporaneous time records, and that Plaintiff has not alleged that the Plans paid more than reasonable compensation; therefore, there has been no breach or loss.  (*See* Doc. 47 at 5–7, 12–23.)

First, as previously stated, Plaintiff does much more than complain about CSX's failure to keep detailed time records.  Plaintiff complains about Defendants'

10

entire process, including the lack of **any** contemporaneous time records, the use of annual estimates rather than actual time, and the allocation of expenses among the Plans. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." (citation omitted)). Thus, even accepting the premise that detailed contemporaneous time records may not be generally required, does not shield Defendants from potential liability.

Second, Plaintiff has plausibly alleged that Defendants breached their fiduciary duties by instituting and maintaining a faulty process, rather than doing their jobs as fiduciaries to ensure that the process adequately protected the Plans' participants and beneficiaries. As the Eighth Circuit stated in *Braden*: "In evaluating whether a fiduciary has acted prudently, we . . . focus on the process by which it makes its decisions rather than the results of those decisions." *Id.* at 595. The process by which Defendants were making decisions is precisely what Plaintiff is suing over. (*See, e.g.,* Doc. 46 at 7 ("Neither the Investment Committee nor the Plan Administration Committee reviews . . . the charged fees . . . . [CSX] did not track the actual services it claims to have provided to the Plans or the time spent by its employees purportedly providing services to the Plans. Rather, . . . [CSX] merely asked its employees to provide an estimate of time spent working on the plans for the entire year.").) As Plaintiff argues: "With no barrier stopping CSX from accessing Plan assets, CSX could charge whatever it deems fit. Such a

11

scheme is analogous to the proverbial fox guarding the hen house." (Doc. 49 at 5.) Thus, Plaintiff has plausibly alleged breaches of fiduciary duty.

Defendants also argue that Plaintiff has failed to plausibly allege damages or loss because, pursuant to ERISA § 408, she has not alleged that CSX was paid more than reasonable compensation for the services that it performed. (*See* Doc. 47 at 18–21); *see also* 29 U.S.C. § 1108(b).  However, the undersigned recommends that this argument should fail as well.  First, given that ERISA § 408 concerns exemptions from prohibited transactions, it is not clear that it is Plaintiff's burden to allege that more than reasonable compensation was paid.  *See, e.g., Woznicki v. Raydon Corp.*, No. 6:18-cv-2090-Orl-78GJK, 2019 WL 5702728, at *2 (M.D. Fla. Nov. 4, 2019) ("The statutory exemptions established by § 1108 are defenses which must be proven by the defendant." (internal quotation marks and citations omitted)); *Perez v. Commodity Control Corp.*, No. 1:16-cv-20245-UU, 2017 WL 1293619, at *6 (S.D. Fla. Mar. 7, 2017) ("A party opposing a motion for summary judgment based on a Section 1108 exemption has a burden to show, by a preponderance of the evidence, that there are genuine issues of material fact regarding the exempt nature of the transaction.").

Second, even if Plaintiff has this burden, the undersigned recommends that she has satisfied it. Given the allegations that CSX's system of fee calculation was based on its convenience, rather than the interests of Plan participants and beneficiaries, and that there was no oversight by any fiduciary, a reasonable

12

inference is that the amount billed favored CSX and harmed the Plans. Moreover, it is understandable that Plaintiff cannot be more specific in her allegations because the pertinent facts, i.e., the precise amounts, "remain in the sole control of the part[y] who stand[s] accused of wrongdoing." *Braden*, 588 F.3d at 602. Therefore, Plaintiff plausibly alleges loss.

Finally, Defendants advance several other arguments regarding some of the individual claims. Because the Motion's primary arguments, which are also focal points of these other arguments, have already been addressed, the undersigned recommends that the analysis is substantially the same. Therefore, the undersigned recommends that the Court reject Defendants' other arguments for the same reasons stated above.

### IV.     Conclusion

The undersigned recommends that the allegations contained in each of the SAC's six claims set forth "factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, accepting these well-pled allegations as true, Plaintiff has plausibly alleged that Defendants are liable under ERISA.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 47**) be **DENIED**.

2. Defendants be **DIRECTED** to answer the SAC **within fourteen (14) days of the Court's ruling**.

### Notice to Parties

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on October 11, 2023.

*[signature: Joel B. Toomey]*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record