UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULIE A. SU, Acting Secretary of
Labor, United States Department of
Labor,

    Plaintiff,

v.                                                    Case No. 3:22-cv-849-MMH-JBT

CSX TRANSPORTATION, INC.,
PLAN ADMINISTRATION
COMMITTEE, INVESTMENT
COMMITTEE, CSX
CORPORATION MASTER
PENSION TRUST, MERGED UTU
PENSION PLAN, GREENBRIER
FROZEN UNION PENSION PLAN,
and CSX PENSION PLAN,

    Defendants.

## **O R D E R**

**THIS CAUSE** is before the Court on the Report and Recommendation (Doc. 51; Report) entered by the Honorable Joel B. Toomey, United States Magistrate Judge, on October 11, 2023. In the Report, Judge Toomey recommends that the Court deny Defendants' Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support Thereof (Doc. 47;

Motion) filed July 17, 2023. Report at 1.[1] Defendants timely filed their objections to the Report on October 25, 2023. See Objections to Report and Recommendation (Doc. 54; Objections). Plaintiff has responded to the Objections. See Acting Secretary's Response to Defendants' Objections to Report and Recommendation and Memorandum of Law (Doc. 57; Response), filed November 8, 2023. In addition, Defendants filed Defendants' Notice of Supplemental Authority (Doc. 59; Supplemental Authority) on November 29, 2023. Accordingly, this matter is ripe for review.[2]

## I.   Standard of Review

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). Pursuant to Rule 72 of the Federal Rules of Civil Procedure (Rule(s)), the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." See Rule 72(b)(3); see also 28 U.S.C. § 636(b)(1). However, a party waives the right to challenge on appeal any unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1.[3] As such, the Court

---

[1] For ease of reference, the Court's citations to page numbers in documents in this record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

[2] Defendants have requested oral argument. See Defendants' Request for Oral Argument on Their Objections to the Report and Recommendation on the Motion to Dismiss the Second Amended Complaint (Doc. 55; Motion for Oral Argument). However, upon review of the record, the Court determines that oral argument will not assist the Court in this instance. Accordingly, the Motion for Oral Argument is due to be denied.

[3] The Magistrate Judge properly informed the parties of the time period for objecting and the consequences of failing to do so. See Report at 14.

reviews those portions of the Magistrate Judge's findings to which no objection was filed for plain error and only if necessary, in the interests of justice. See id.; see also Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); Dupree v. Warden, 715 F.3d 1295, 1304–05 (11th Cir. 2013) (recommending the adoption of what would become 11th Circuit Rule 3-1 so that district courts do not have "to spend significant amounts of time and resources reviewing every issue—whether objected to or not.").

## II. Discussion

In their Motion, Defendants CSX, the Plan Administration Committee, and the Investment Committee seek dismissal of Plaintiff's Second Amended Complaint (Doc. 46; Second Amended Complaint), filed on June 26, 2023, for failure to state a claim upon which relief can be granted.[4] See Motion at 1–2. Judge Toomey recommends that the Court deny the Motion in its entirety because "accepting [the] well-pled allegations as true, Plaintiff has plausibly

---

[4] Plaintiff also names the CSX Corporation Master Pension Trust, Merged UTU Pension Plan, Greenbrier Frozen Union Pension Plan, and CSX Pension Plan as Defendants. However, these entities are joined in this action "solely to ensure that complete relief may be granted." Second Amended Complaint ¶ 16. Accordingly, unless otherwise indicated, the Court's use of the word "Defendants" in this Order refers to CSX, the Plan Administration Committee, and the Investment Committee.

alleged that Defendants are liable under ERISA" as to each of the claims in the Second Amended Complaint. See Report at 13. Because the Court finds that Defendants' Objections are due to be overruled, and the Report adopted as the Court's opinion, the Court will not repeat the factual and procedural history of the case here. Instead, the Court writes briefly only to address Defendants' specific objections to the Report.

As an initial matter, the Court notes that Judge Toomey previously observed that the first amended complaint "appear[ed] to be a shotgun pleading" because it "contain[ed] 'multiple counts where each count adopts the allegations of all preceding counts.'" See Order (Doc. 39) at 2, entered April 20, 2023 (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015)). Despite this, in filing the Second Amended Complaint, Plaintiff continues to incorporate all preceding allegations into each count of the Second Amended Complaint. See Second Amended Complaint ¶¶ 47, 51, 54, 58, 61 (incorporating "all preceding allegations"). While the Court reasonably might have ordered a re-pleader, the Court is not convinced that Plaintiff's pleading error is fatal under the circumstances of this case. Indeed, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." See Weiland, 792 F.3d at 1324. Notably, Defendants have not "move[d] for a more definite

statement . . . or otherwise assert[ed] that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it." See id. And the arguments presented by Defendants in the Motion show that they have had no difficulty identifying the claims Plaintiff seeks to pursue or the factual basis of those claims.[5] Accordingly, rather than require that Plaintiff replead, the Court will construe each Count in the Second Amended Complaint as incorporating only those allegations in Paragraphs 1–42, and not the allegations in any preceding Count.

Defendants' primary objection to the Report is that Judge Toomey "seems to infer that Defendants had a motive and opportunity to over-charge for their services, and the alleged lack of records showing that they did not over-charge somehow makes it plausible that they in fact did."[6] See Objections at 9 (asserting that this is "the primary basis for Defendants' Objection"). In support, Defendants argue that the alleged "motive and the opportunity [for

---

[5] Although Defendants opposed Plaintiff's request to file the Second Amended Complaint based on the shotgun nature of the pleading, they did not seek dismissal on that basis.

[6] The parties disagree about whether Plaintiff must allege a loss to the plans in order to bring the claims she asserts in this action. See Objections at 4 (stating that loss to the plans and payment of unreasonable compensation "are necessary elements of Plaintiff's stated legal theories"); Response at 14–17 (arguing that the reasonableness of compensation is an affirmative defense to the prohibited transaction claims). In the Report, Judge Toomey observes that "it is not clear that it is Plaintiff's burden to allege that more than reasonable compensation was paid" to CSX, but he does not resolve the issue because he concludes that "even if Plaintiff has this burden . . . she has satisfied it." See Report at 12. In adopting the Report the Court need not (and does not) determine whether Plaintiff must plead a loss to the plans or the unreasonableness of compensation in bringing any of the claims she asserts, because she has sufficiently plead such a loss.

CSX] to overcharge" are not sufficient to establish that Defendants caused any loss to the plan or charged unreasonable fees, id. at 12, and that CSX's alleged failure to keep "contemporaneous time records" is equally insufficient because ERISA does not require such documentation. Id. at 13. The problem with these arguments, of course, is that Judge Toomey does not conclude that either allegation is sufficient to plausibly allege a loss to the plans. Indeed, he specifically explains that "Plaintiff does much more than complain about CSX's failure to keep detailed time records" in her Second Amended Complaint. See Report at 10. Judge Toomey also bases his recommendation on "the allegations that CSX's system of fee calculation was based on its convenience, rather than the interests of Plan participants and beneficiaries, and that there was no oversight by any fiduciary," which supports the "reasonable inference" that "the amount billed favored CSX and harmed the plans."[7] See id. at 12–13. Accordingly, Defendants' argument does not undermine Judge Toomey's recommended resolution as to this issue.[8]

---

[7] Defendants also assert that Judge Toomey incorrectly reasons that several pertinent facts are in Defendants' sole control because Plaintiff, as the Secretary of Labor, "has the power to conduct investigations, including by sending subpoenas for records and depositions." See Objections at 17. But in her Second Amended Complaint, Plaintiff alleges that the relevant documentation does not exist. See Second Amended Complaint ¶¶ 25–27. And Defendants provide no authority supporting the proposition that Plaintiff's ability to investigate requires her to plead more specific information than would otherwise be required in order to state a claim for relief. Accordingly, this argument is not persuasive.

[8] In the Supplemental Authority, Defendants attempt to bolster this argument by citing Cunningham v. Cornell Univ., 86 F.4th 961 (2d Cir. 2023). In that case, the Second Circuit affirmed the dismissal of a prohibited transaction claim where the plaintiff alleged only that the defendant "failed to seek bids from other recordkeepers" and that "the fees were

Defendants next argue that Plaintiff fails to plausibly allege that CSX or the Investment Committee were fiduciaries with respect to the payment of administrative expenses. See Objections at 17–21. As to the Investment Committee, Judge Toomey concludes that this entity was a fiduciary with respect to the payment of administration expenses because Plaintiff alleges that the Investment Committee is responsible for approving reasonable expenses related to administration of the plans, and the 2018 CSX Investment Committee Policies & Procedures Manual (Doc. 15-1; Committee Policies) corroborates this.[9] See Report at 9–10. Additionally, Judge Toomey notes that even if the plan documents contradicted the allegation, "it is plausible that Defendants were acting inconsistently with the Plan documents." Id. at 10.

While the Committee Policies reflect that the Investment Committee may "ensure that fees paid to service providers and other expenses of the Plans are reasonable as required by law," see Committee Policies at 5, Defendants point

---

higher than some theoretical alternative service." See Cunningham, 86 F.4th at 978. The specific procedural deficiencies in that case were insufficient to "plausibly allege that the compensation was itself unreasonable" for purposes of a prohibited transactions claim (although the court noted that they "may well be sufficient to state [a] claim for a breach of the duty of prudence"). Id. Here, however, Plaintiff alleges that CSX charged fees to the plans based on "annual estimates rather than actual time," and allocated those estimated hours among the plans based on the amount of funds in each plan, not the actual services provided. See Report at 11. Because of these significant factual differences, Defendants' reliance on Cunningham is unavailing.

[9] According to Plaintiff's Opposition to Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim and Memorandum of Law (Doc. 49; Motion Response), the Second Amended Complaint "incorporates relevant sections of" this document. See Motion Response at 4. Defendants do not argue that Judge Toomey erred in considering this document in the Report.

out that this document <u>also</u> says that "'[t]he Investment Committee and Plan Administrator will consider the fees and expenses applicable to their oversight areas[.]'"[10]   Objections at 18 (quoting Committee Policies at 16 (alterations in original)).   Defendants argue that the "Plaintiff herself describes the expenses as being related to 'administrative services,' which certainly suggests that they fall under the 'Administration' Committee's scope of authority," as opposed to that of the Investment Committee.   See <u>id.</u> at 18–19.

But while the names of the two committees may "suggest[ ]" that the Plan Administration Committee (as opposed to the Investment Committee) exercised control over the administrative services fees, <u>see</u> <u>id.</u> at 19, the Court must draw all reasonable inferences in Plaintiff's favor in resolving the Motion.   <u>See</u> <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam); <u>see also</u> <u>Pledger v. Reliance Trust Co.</u>, 240 F. Supp. 3d 1314, 1324 (N.D. Ga. 2017) (noting that courts "have been hesitant to resolve breach of fiduciary claims under ERISA due to a purported lack of fiduciary status at the motion to dismiss stage, particularly where, as here, the plaintiffs allege

---

[10] Defendants represent that this language comes from "the same Charter."   <u>See</u> Objections at 18.   But while it comes from the same <u>document</u> which Judge Toomey quotes, the 2018 Charter is only part of that document.   <u>See</u> Committee Policies at 2 (reflecting that the first portion of the document is the Management Charter, which is followed by the Investment Committee Administration Guidelines).   The language Judge Toomey quotes in the Report comes from the Charter, while the language Defendants quote comes from the Administration Guidelines which follow the Charter.   <u>See</u> <u>id.</u> at 5; <u>id.</u> at 16.   But because the discrepancy does not affect the Court's analysis, the Court will assume that these provisions are equally relevant to the scope of the Investment Committee's responsibilities.

the various defendants are interrelated" (collecting cases)).[11] The Committee Policies appear to reflect that the Investment Committee had authority to ensure that all administrative fees were reasonable. See Committee Policies at 5; see also Master Pension Trust Agreement of CSX Corporation and Affiliated Companies (Doc. 10-3; Trust Agreement) at 6 ("The Investment Committee . . . shall be responsible for the administration and management of the Fund held by the Trustee under this Agreement . . . .").[12] Even assuming that the administrative services fees were outside the Investment Committee's normal oversight area, the Investment Committee's obligation to "'consider the fees and expenses applicable to [its] oversight area,'" Objections at 18 (quoting Committee Policies at 16), does not contradict the allegation that it also had authority with respect to other fees and expenses—regardless of whether other entities had concurrent authority in this area. Accordingly, this argument is unavailing.

Judge Toomey also concludes that Plaintiff plausibly alleges "that CSX acted as a functional fiduciary regarding the payment of administrative expenses" based on allegations that it "controlled, directed, and engaged in the

---

[11] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[12] As with the Committee Policies, no party argues that Judge Toomey erred in considering this document in his Report. See Report at 10 (quoting this provision).

subject transactions despite what the Plan documents said." See Report at 8–9. Defendants argue that this was an error because "merely requesting payment for its services" is not a fiduciary function, and because the ability to appoint fiduciaries makes CSX "a fiduciary only with respect to the exercise of this appointment power." See Objections at 20. These arguments miss the mark. The Court does not read the Report to suggest that the act of "charging for services"—standing alone—was a fiduciary act, see id. at 20 n.3, or that the "allegations about the power to appoint fiduciaries were sufficient to plausibly allege that CSX was itself a fiduciary" with respect to the payment of administrative fees.[13] See id. at 21. Rather, Plaintiff alleges that (1) CSX had absolute authority to appoint committee members, (2) those committee members did not review the reasonableness of CSX's fees despite their obligation to do so, and instead of appointing new committee members, (3) CSX

---

[13] On this point, Defendants contend that Judge Toomey "erred in disregarding [the] persuasive authority" of Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc., 658 F. App'x 966, 971 (11th Cir. 2016). See Objections at 20 n.3. The Court disagrees. It is true that, in Carolinas, billing fees to an ERISA plan was insufficient to establish that the defendant exercised authority or control over those funds because that defendant "was not a signatory on the plan's bank account and . . . could not dispose of plan assets without the trustees' approval." See Carolinas, 658 F. App'x at 971. But the Eleventh Circuit in that case did not determine that "regardless of who is charging for services, . . . the act of charging [for services] is not a fiduciary act." Objections at 20 n.3. Rather, the court determined that the act of submitting a bill for services was not sufficient on its own to establish "actual authority or control over the plan's assets." See Carolinas, 658 F. App'x at 971. Here, unlike in Carolinas, Plaintiff alleges that CSX had broad authority "to appoint, retain and remove" the very fiduciaries who failed to exercise oversight over the fees CSX billed. See Second Amended Complaint ¶ 10; see also Report at 9 n.6 (rejecting Defendants' reliance on Carolinas because "CSX is distinguishable from the third-party administrator" in that case). Because of this significant factual difference, the Court is not persuaded by Defendants' reliance on Carolinas.

"streamlined [its] fees calculations to the detriment of the Plans." See Report at 3, 9; Second Amended Complaint ¶ 24. Accepting these allegations as true (as the Court must), Plaintiff plausibly alleges that CSX did not simply charge for its services or appoint members of the committees, but "caused the Master Pension Trust to pay itself Service Fees without any oversight."[14] See Second Amended Complaint ¶ 12; Report at 9. Accordingly, Plaintiff sufficiently alleges "that CSX acted as a functional fiduciary regarding the payment of administrative expenses." See Report at 9.

For these reasons, Defendants' Objections are unavailing. Upon independent review of the file and for the reasons set forth above, the Court will overrule Defendants' Objections and accept and adopt the Report as the opinion of the Court. Accordingly, it is

**ORDERED:**

1. Defendants' Request for Oral Argument on their Objections to the Report and Recommendation on the Motion to Dismiss the Second Amended Complaint (Doc. 55) is **DENIED**.

---

[14] Defendants rely on In re Merck & Co., Inc. Sec. Derivative & ERISA Litig., No. 05-2369(SRC), 2006 WL 2050577, at *10 (D.N.J. July 11, 2006), where a court concluded that an entity's mere power to appoint fiduciaries does not plausibly suggest that the entity leveraged that power to "exercise[ ] actual control" over the plan in question. But that case did not involve allegations that plan fiduciaries failed to review the reasonableness of fees charged by the defendant that appointed them (to the benefit of that same defendant). See generally id.

2. Defendants' Objections to Report and Recommendation (Doc. 54) are **OVERRULED.**

3. The Report and Recommendation (Doc. 51) is **ADOPTED** as the opinion of the Court.

4. Defendants' Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support Thereof (Doc. 47) is **DENIED.**

5. Defendants are **DIRECTED** to file an answer to the Second Amended Complaint on or before **April 10, 2024**.

6. The parties shall file an Amended Joint Uniform Case Management Report no later than April 17, 2024.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2024.

MARCIA MORALES HOWARD
United States District Judge

lc31

Copies to:

Counsel of Record